## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID KRAEMER**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**USHEALTH ADVISORS, LLC**, a Texas company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff David Kraemer ("Plaintiff Kraemer" or "Kraemer") brings this Class Action Complaint and Demand for Jury Trial against Defendant USHealth Advisors, LLC ("Defendant" or "US Health Advisors") to stop the Defendant from violating the Telephone Consumer Protection Act by placing calls and text messages to telephone numbers registered on the Do Not Call Registry without consent, in addition to sending text messages to clients after they have communicated stop to the Defendant's employees. The Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kraemer, for this Complaint, allege as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorneys.

## PARTIES

1.     Plaintiff Kraemer is a resident of Millstadt, Illinois.

1

2.      Defendant USHealth Advisors, LLC, is a limited liability company registered in Dallas, Texas and headquartered at Fort Worth, Texas. Defendant US Health Advisors conducts business throughout this District and Missouri.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant because the unlawful conduct giving rise to this case was directed into this District on behalf of Defendant to solicit business to consumers within this District.

5.      The venue is proper under 28 U.S.C. § 1391(b) because the Plaintiff is located in this District.

## INTRODUCTION

6.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

2

8.    By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11.    According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in November 2023 alone, at a rate of 150.2 million per day. www.robocallindex.com (last visited December 31, 2023).

12.    The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

15.     Defendant US Health Advisors is a wholly owned national sales and distribution subsidiary of US Health Group.[3] Agents working on behalf of Defendant US Health Group identify as agents of either US Health Group or Defendant US Health Advisors and sell insurance plans to consumers throughout the United States.

16.     Defendant US Health Advisors is the marketing arm of US Health Group and specializes in marketing a portfolio of health coverage plans underwritten and insured by US Health Group's family of insurance companies.[4]

17.     US Health Group and US Health Advisors, operate together, through more than 3,600 agents, to sell health insurance to consumers across 31 states around the U.S. including Missouri.[5]

18.     US Health Advisors provides its agents with a dialer system, as well as leads for the agents to contact, many of which are bad leads that they have no consent to contact in the first place.

19.     Defendant US Health Advisors solicits business from consumers using solicitation calls and text messages.

20.     Defendant provides the VanillaSoft Customer Relationship Management ("CRM") system to their employees.[6] This CRM system includes an autodialer system that gives employees the ability to send automated text messages through an "SMS drip campaign", wherein the

---

[3] https://www.linkedin.com/company/ushealth-advisors/
[4] http://www.ushealthgroup.com/BecomeAnAgent.aspx
[5] https://www.ushealthgroup.com/
[6] https://vanillasoft.com/company/support/usha-release-notes#u2020.07a

4

consumer will receive scheduled text messages that are sent *en masse* by one of Defendant's employees:



21.    The VanillaSoft CRM also includes an autodialer that the Defendant's employees can utilize, which includes a progressive dialer that dials consumer phone numbers automatically as displayed on VanillasSoft's website:



---

[7] *Id.*
[8] https://vanillasoft.com/product/features/auto-dialing/

22.     As recently as October 14, 2022, employees of US Health Advisors have posted complaints online regarding the quality of leads they were provided by the Defendant, going so far as to claim that most of the leads are poor and the leads often curse at them:

## Lack of Team Support/Proper Training

Licensed Insurance Agent (Former Employee) - Boca Raton, FL - October 14, 2022

I had made a few friendships with my fellow incoming co-workers. However, the people who were already established at the sector I worked for, were so focused on their individual successes, rather than building their team up. The training program was very unstructured and there were no quality leads provided.[9]

### The people you work with are great but the job itself is hard to get into

Licensed Insurance Agent (Former Employee) - Clayton, NC - September 21, 2022

It's a great place with lots of nice people, the leaders are super helpful and really want you to succeed. However, in my experience I worked for a month with no money in sight. It's definitely not a stand alone job to start out with. It takes a long time to be completely appointed and be able to sell under your own name, and when you do you can either take advances (which means you wind up owing the company money) or wait an extended period of time to recieve an "as earned" paycheck. I wouldn't recommend this to anyone who doesn't have a job with a good enough income to rely on. There were a few people who had been there for years (they have a 93% turn over rate) and even some of them still had second jobs. You have to be ready to be cussed out, and berated daily on the phone. Most leads don't want to be called, including the ones that come in through their own request online. I think this is mainly due to starting with too many people at once, so the poor leads are getting called MANY times a day every single day, even if they answer and hang up.

I've seen people claim it's a scam and that's just not true. They just don't realize the amount of work, time and effort you have to invest into it to make absolutely any money. There are people who can succeed at this job, there's people who make lots and lots of money but it takes an insane amount of work.

✓ **Pros**
Great bosses, Great co-workers, Constant training and motivation.

✕ **Cons**
No benefits, Bad leads, LOTS of work.[10]

---

[9] https://www.indeed.com/cmp/Ushealth-Advisors/reviews
[10] *Id.*

### Hit or miss

Licensed Health Insurance Agent (Former Employee) - Tampa, FL - September 6, 2022

One good thing I have to say about working here is that you definitely learn a lot about the insurance industry, and the culture isn't like your typical corporate setting where you are micromanaged on every little thing.

THAT BEING SAID, there are a lot of negatives that come with this job. First off, it's commission only and no benefits, so you can work 6-7 days a week, 12 hours a day MINIMUM, and still finish out the week without a paycheck. The company does provide leads of their own and does reward you with lead money from time to time so you can purchase on your own, but the lead quality more often than not is extremely poor. They expect you to make at least 300 calls a day to these leads, and most of the time, the ones who will give you the time of day (because they are already getting dozens of calls a day by other agents and are understandably quite irate), usually don't qualify for the product due to health, income, or a combination thereof. Obviously, the more contacts you make, the greater the chances you will have, but there are many days where getting in touch with a good candidate for the product who is willing to speak with you is comparable to finding a needle in a haystack and can get extremely frustrating.                                    [11]

## US Health Advisors' Agents Place Calls and Send Text Messages To Consumers Who Never Provided Consent to be Contacted

23.     Numerous past and present employees of the Defendant have posted complaints online regarding the cold calling they were directed to engage in by the Defendant to generate business, including:

### You must sell your soul to work here

Life and Health Insurance Agent (Former Employee) - Lutz, FL 33558 - August 28, 2022

If you have absolutely nothing else going on in your life and are prepared to work 12+hours every single day then this is the job for you! You must have money in the bank before starting here because you won't make a dime for a very long time. It is commission only with lots of cold calling.                                    [12]

---

[11] *Id.*

[12] *Id.*

## Biggest mistake of my life

Insurance Advisor (Former Employee) - Kansas City, MO - June 28, 2022

Ooo USHA. It's all stars and rainbows to get you in the door. It's 100% commission paid. Be prepared to spend lots of money on getting certified and buy licenses to sell in many states. And making sure you have computers, monitors and headphones. Training was mediocre and management was a mess. Work work work and kill yourself working some more for very little pay. Cold calling at its finest.
You can either do this kind of work and do it really really well and be successful at it, or you just can't. There is no middle ground in insurance sales. Period.                13

## Terrible idea ...

Nov 4, 2022 - Health Benefits Specialist in Houston, TX

❌ Recommend    — CEO Approval    ❌ Business Outlook

Pros
Easy Interview Easy to learn

Cons
This job is frustrating , a lot of cold calling , rude customers        14

## Better love cold calling

Licensed Health Insurance Agent (Former Employee) - Charlotte, NC - March 30, 2021

The job description on various websites claims that they provide warm leads with no cold calling. That is completely false depending on the area you will be cold calling small businesses during working hours. Therefore, no one wants to talk and they never reached out looking for coverage. No phone training what so ever, just thrown into the water and expected to swim (thrown on the phone and figure it out). the only training there is the product training. The software you use is 100$ a month which was not made known in the beggining.                15

---

[13] *Id.*
[14] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268.htm?sort.sortType=RD&sort.ascending=false&filter.iso3Language=eng
[15] https://www.indeed.com/cmp/Ushealth-Advisors/reviews/better-love-cold-calling?id=350e14cd5ba8386d

24.    To make matters worse, the Defendant lacks a sufficient opt-out system that stops employees from sending solicitation text messages to consumers when the consumers opt-out of receiving solicitation text messages, as per Plaintiff's experience.

25.    The Defendant is aware that consumers are receiving calls and texts despite asking for them to stop and have not instituted proper procedures to prevent consumers from continuing to receive solicitations. Numerous consumers have posted complaints on the Better Business Bureau website to the Defendant, notifying them of this issue:

- "For the past couple of weeks I have received 100+ solicitations via cell phone and text messaging from ** Health Advisors via multiple phone numbers. I did not request any information from their company.. My cell phone is registered on the do not call list and I have filed a complaint on that site FTC as well.I see there have been numerous complaints in this regard as well as legal action. I am on the verge of taking legal action to stop this illegal contact.Please have them cease and desist immediately. Thank you"[16]

- "They started calling non stop around 8am today, *I've REPEATEDLY told them no thank you and blocked their number*, but they keep calling from a different number. *When they called the last time I pressed 5 to be removed from the list, it put me on hold for an operator*. This is harassment. I see they do the same to others. Why are they still in business???"[17] (emphasis added)

- "In just the past day, I have received 50+ unsolicited phone calls from people claiming to represent US Health Advisors, asking for "*********". They said I completed an Obamacare form ( which I never filled out), which resulted in the calls. They claim I have requested information about health insurance which is false as I am insured via my military service. Different numbers are generated, making it nearly impossible to remove yourself from your calling list. *I answered and told them they have the wrong number and to remove me from the list*, which *prompted a call back* from someone with an aggressive and confrontational tone. This is not a legitimate business and needs to be penalized for its unlawful practices."[18] (emphasis added)

- "In just the past week (5/12/21 - 5/18/21), I have received 100+ unsolicited phone calls from people claiming to represent US Health Advisors. They claim I have requested information about health insurance which is false as I am insured via my

---

[16] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/complaints

[17] *Id.*

[18] *Id.*

job. These calls begin at 8 am and occur about every 20 minutes until 8 or 9 pm. I've had to silence my phone and stop wearing my Apple Watch due to this harassment. ***I can barely use my phone due to this continuous harassment. I initially answered a few calls and asked to be removed from their list only to be met with a rude and threatening tone***. This is ***causing me undue stress and affecting not only my use of my personal property but my ability to concentrate during my work day***. This ridiculous scheme should not be allowed to continue."[19] (emphasis added)

- "An agent with US Health Advisors, phone number, ***-***-****, sent several insulting, harassing, unwanted text messages to my husband ***after she was asked to stop***. ***She also continuously called him after she was asked to stop***. She was told we have health insurance and we were not interested in what she was trying to talk about. My husband blocked his number to which she proceeded to call him from a private number over and over until 9:15 pm."[20]

- "In the last couple of weeks I have received over 50 phone calls & texts from all over the country trying to sell me Health Insurance by US Health Advisors. Calls/texts indicate the solicitor has received my request for a health insurance quote for which I never applied or ever deliberately gone to their website. My assumption is there is a popup while surfing on your phone which causes you to inadvertently click & it captures your cell number. I've gone to their website and all links related to filing a complaint directly with the company are disabled or missing. ***I have indicated to one of the callers to remove me from the call list or put me on a do not call list only to have them hang up***. Seems my false request continues to circulate to an endless number of "licensed agents" based on "I have just received your request" They are harrassing me with their telemarketing, stolen my personal information. Seems numbers I have blocked continue to come through text. This IS a SCAM!"[21] (emphasis added)

- "Receiving 50 or more calls even though I let the agent know I was not seeking coverage, I have Medicaid. ***Asked several more to add me to the do not call list. Was hung up whenever I asked this*** . It is becoming predatory. ***They cut you off and hang up when you say to add to do not call list***. I've blocked more than 20 numbers today and some are still coming through with the same exact number."[22] (emphasis added)

- "The company in question has called my wife and I multiple times they continue to ***call after being asked to be placed on the do not call***. When we ask for a manager they hang up."[23] (emphasis added)

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

## US HEALTH ADVISORS' VICARIOUS LIABILITY

26.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

28.    The FCC has instructed that sellers such as US Health Advisors may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third- party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

29.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-pary telemarketers. *Id*. at 6574 ¶ 1.

30.    US Health Advisors is liable for telemarketing calls and texts placed by its agents to generate customers for US Health Advisors.

11

31.     US Health Advisors provides scripts for text messages to its agents consistent with the content the text messages sent to the Plaintiff.

32.     US Health Advisors directs its agents to state they are with US Health Advisors when telemarketing.

33.     US Health Advisors authorizes its agents to send text messages to consumers to solicit insurance sales.

34.     US Health Advisors authorizes its agents to use a specific marketplace for leads that was used by the agents to obtain Plaintiff's lead.

35.     US Health Advisors authorizes agents to use a specific text messaging platform for telemarketing that was used by the agents to text message Plaintiff.

36.     US Health Advisors provides access to its propriety systems to its agents to input information regarding insurance sales solicited through telemarketing.

37.     US Health Advisors provides access to its proprietary systems to its agents to obtain pricing information to use to solicit insurance sales through telemarketing.

38.     US Health Advisors provided the specific criteria for the prospective customers it would accept and required its agents to adhere to those criteria.

39.     US Health Advisors knew or reasonably should have known that its agents, including the ones who contacted the Plaintiff in this case, were violating the TCPA on US Health Advisors's behalf, but US Health Advisors failed to take effective steps within its power to cause them to stop.

40.     US Health Advisors benefits from the sales made by its agents through telemarketing without consent.

41.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

42.     In response to these unsolicited calls and text messages, the Plaintiff brings this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act by failing to maintain adequate policies and procedures for maintaining and honoring do not contact requests, and requiring the Defendant to cease from violating the DNC itself, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF KRAEMER'S ALLEGATIONS

43.    Plaintiff Kraemer is the subscriber and the sole user of the cell phone number ending with 3468.

44.    Plaintiff Kraemer's cell phone number was registered on the DNC on July 2, 2003 and he uses it as one would use a residential landline.

45.    When Plaintiff Kraemer acquired his cell phone number in 2017/2018, he tried to register it on the DNC but he found that the number was already registered.

46.    Plaintiff Kraemer does not own a residential landline number.

47.    Plaintiff Kraemer's cell phone number is registered under his name and he pays for the service in full.

48.    Plaintiff Kraemer does not and has never used his cell phone number for business purposes or employment.

49.    It has never been held out by Plaintiff Kraemer to the public or advertised for business purposes.

50.    It has only ever been used as a personal use phone number.

51.    Plaintiff Kraemer uses his cell phone number to communicate with family and friends.

52.    Plaintiff Kraemer uses his cell phone number to deal with household issues like scheduling services.

53.    Throughout 2023, Plaintiff has received calls and text messages from the Defendant soliciting insurance quotes for somebody named Randy.

54.    Plaintiff does not know who Randy is and has told the callers and texters that he is not Randy and he has specifically asked for the calls to stop, but they have continued.

55.     On July 28, 2023, Plaintiff Kraemer received an unsolicited text message from the Defendant at 5:34 PM from 325-266-9340. Plaintiff immediately replied "Stop" to the text message:



56.     Despite his clear stop request, Plaintiff Kraemer received another unsolicited text message from the Defendant to his cell phone on August 11, 2023 at 2:50 PM from 325-420-4542.

57.     On September 13, 2023 at 3:18 PM, Plaintiff texted "Stop" to 325-420-4542 to try and put a stop to the unsolicited calls and text messages he was receiving from the Defendant.



58.    On August 14, 2023, Plaintiff Kraemer received another unsolicited text message from the Defendant from 447-203-0037 to his cell phone.

59.    Frustrated because of the calls and texts, Plaintiff Kraemer texted back "What is the name of your company" to 447-203-0037. In response, the telemarketer texted that she is with USHealth Group and then sent another text soliciting an insurance quote.

60.    Plaintiff Kraemer received additional text messages from the Defendant, from 447-203-0037 on August 14, 2023 at 4:48 PM and 7:51 PM, and August 16, 2023 at 7:55 PM, and August 21, 2023 at 7:58 PM:



61.    On August 28, 2023, Plaintiff Kraemer received another unsolicited text message from the Defendant from 447-547-0001 at 2:55 PM to his cell phone.

62.    When Plaintiff Kraemer did not respond to the aforementioned text message, he received a 2nd unsolicited text message from the Defendant using 447-547-0001 on August 29, 2023 at 447-203-0037 at 2:14 PM:



63.    The aforementioned text messages clearly state that the text was sent by Ariel with USHealth Advisors.

64.    On September 5, 2023, Plaintiff Kraemer received another unsolicited text message from the Defendant from 754-203-8098 at 9:51 AM to his cell phone.

65.    Nearly 3 hours later on September 5, 2023 at 12:46 PM, Plaintiff received a 2nd unsolicited text message from the Defendant, from 754-203-8098. In response, Plaintiff texted "No" to 754-203-8098.

66.    At 3:34 PM on September 5, 2023, Plaintiff received a 3rd unsolicited text message from the Defendant, from 754-203-8098 acknowledging the opt-out request but still soliciting a health insurance plan:



*Figure 1 - September 5, 2023*

67.     The aforementioned text messages were sent on behalf of Cole Wilson, a health insurance agent who works for USHealth Advisors.[24]

68.     On September 13, 2023 at 9:59 AM, Plaintiff Kraemer received yet another unsolicited text message to his cell phone from the Defendant soliciting a health insurance plan, from 772-252-7760.

69.     As with the previous text message, this text message was also sent by Jessica.

70.     Immediately in response to this unsolicited text message, Plaintiff Kraemer replied, Stop."

---

[24] https://www.linkedin.com/in/cole-wilson-55b657216/



*Figure 2 - September 13, 2023*

71.     On September 22, 2023 at 10:39 AM, Plaintiff Kraemer received a text message to his cell phone from the Defendant, from 614-470-2953:



72.     614-470-2953 was sent by Victoria Makulkik, a USHealth Advisors employee.[25]

73.     On October 8, 2023 at 10:39 AM, Plaintiff Kraemer received a text message to his cell phone from the Defendant, from 321-785-7550. He replied asking, "Who this" but there was no response:

---

[25] https://www.ushagent.com/VICTORIAMAKULIK



74.    On October 22, 2023 at 2:17 PM, Plaintiff Kraemer received a text message to his cell phone from the Defendant, from 754-203-8113. He replied asking, "Who this" but there was no response:



75.    On October 25, 2023 at 6:17 PM, Plaintiff Kraemer received a text message to his cell phone from the Defendant, from 863-949-8603.

76.    Plaintiff Kraemer immediately sent "Stop" to 863-949-8603:



77.    On November 13, 2023, Plaintiff Kraemer received a 2ⁿᵈ text message to his cell

phone from the Defendant, from 614-470-2953.

78.    In response, Plaintiff Kraemer immediately texted "Stop" to 614-470-2953 and he

immediately received a confirmation that his cell phone number was unsubscribed:



79.    On November 15, 2023 at 4:24 PM, Plaintiff Kraemer received another unsolicited

text message to his cell phone from the Defendant, from 941-977-8253.

80.    Plaintiff Kraemer immediately sent "Stop" to 941-977-8253:



*Figure 3 - November 15, 2023*

81.    On November 16, 2023 at 5:52 PM, Plaintiff Kraemer received another unsolicited text message to his cell phone from the Defendant, from 216-532-0165:



82.    All of the text messages that Plaintiff Kraemer received were sent by the Defendant.

83.    Plaintiff does not know who Randy is or why he is receiving calls/texts asking for Randy.

84.     The unauthorized solicitations that Plaintiff Kraemer received from Defendant, as alleged herein, have harmed Plaintiff Kraemer in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

85.     Seeking redress for these injuries, Plaintiff Kraemer, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

86.     Plaintiff Kraemer brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called/texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called/texted Plaintiff.

> **Internal Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called/texted more than one time, (2) within any 12-month period (3) for substantially the same reason Defendant called/texted Plaintiff, (4) including at least once after the person requested that they stop calling and/or sending text messages.

87.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or

released. Plaintiff Kraemer anticipates the need to amend the Class definitions following appropriate discovery.

88.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and the Plaintiff is a member of the Classes because she received text messages as part of the same telemarketing campaign resulting in text messages sent to other Class members.

89.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    whether Defendant's conduct violated the TCPA;

(b)    whether Defendant placed multiple calls to Plaintiff and members of the DNC class without first obtaining consent to make the calls;

(c)    whether the Defendant or an agent who called/texted on behalf of the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

90.    **Adequate Representation**: Plaintiff Kraemer will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in class actions. Plaintiff Kraemer has no interests antagonistic to those of the Classes, and Defendant have no defenses unique to Plaintiff. Plaintiff Kraemer, and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial

resources to do so. Neither Plaintiff Kraemer, nor his counsel have any interest adverse to the Classes.

91.    **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kraemer. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kraemer and the Do Not Call Registry Class)**

92.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

93.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

94.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

95.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

96.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

97.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

<u>SECOND CAUSE OF ACTION</u>
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kraemer and the Internal Do Not Call Class)**

98.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

99.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer

reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

100.    Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

101.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

102.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kraemer, individually and on behalf of the Classes, pray for the following relief:

a.) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Kraemer as the representative of the Classes; and appointing his attorneys as Class Counsel;

b.) An award of actual and/or statutory damages and costs;

c.) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d.) An injunction requiring the Defendant to cease all unsolicited calling activity, and
to otherwise protect the interests of the Class; and

e.) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kraemer requests a jury trial.

**DAVID KRAEMER**, individually, and on behalf of all others similarly situated,

DATED this 6th day of February, 2024.

Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*