IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID KRAEMER, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:24-cv-275-DWD<br>) |
| USHealth Advisors, LLC, a Texas company, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 26). Plaintiff filed a Response in Opposition, and Defendant filed a Reply in Support, of that Motion to Dismiss. (Docs. 30 & 34). For the reasons stated below, the Motion to Dismiss is **DENIED**.

### I. BACKGROUND

Defendant, a wholly owned national subsidiary of US Health Group, markets and sells health insurance plans to consumers in the United States. (Doc. 25, pg. 4). Defendant allegedly solicits business by providing its agents with consumer leads, sales scripts or templates, and an automatic dialer system, which "gives employees the ability to send automated text messages through an 'SMS drip campaign' " and allows the "dial[ing] [of] consumer phone numbers automatically." (Doc. 25, pgs. 4-5, 12). Consumers allegedly "receive scheduled text messages that are sent *en masse* by one of Defendant's employees." (Doc. 25, pgs. 4-5). Further, Plaintiff alleges many of the leads are "bad" or

"poor," as the agents do not have consent to contact the consumers. (Doc. 25, pgs. 4, 6-7). Plaintiff was allegedly exposed to this misconduct because, "[t]hroughout 2023, [he]…received calls and text messages from…Defendant soliciting insurance quotes for somebody name Randy," despite "not know[ing] who Randy is and…t[elling] the callers and texters that he is not Randy and…ask[ing] for the calls to stop." (Doc. 25, pgs. 14-30).

Therefore, on behalf of himself and two proposed classes, Plaintiff filed this action against Defendant under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), alleging vicarious liability related to Defendant's agents' placing of phone calls and sending of text messages, without consent, to telephone numbers on the Do-Not-Call Registry. (Doc. 25, pgs. 1, 4, 9, 11, 14, 30-36). Plaintiff further alleges Defendants' agents repeatedly send text messages to consumers, despite receiving, and confirming the receipt of, a "stop" communication. (Doc. 25, pgs. 1, 9, 12, 14-19, 21-22, 24-29). Notwithstanding consumer complaints, Defendant also allegedly failed to "institute[] proper procedures to prevent consumers from continuing to receive solicitations." (Doc. 25, pgs. 9-10, 12). Plaintiff defines the proposed classes as follows:

> Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called/texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called/texted Plaintiff.
>
> Internal Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called/texted more than one time, (2) within any 12 month period (3) for substantially the same reason Defendant called/texted Plaintiff, (4) including at least once after the person requested that they stop calling and/or sending text messages.

2

(Doc. 25, pg. 30).

As relief for Defendant's alleged misconduct, Plaintiff seeks declaratory, injunctive, and monetary relief. (Doc. 25, pgs. 1, 35-36).

## II. ANALYSIS

Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint is filed under Rule 12(b)(6), which provides for challenges to a complaint based upon the failure to state a claim for which relief may be granted. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive such a motion, which tests the sufficiency of the complaint but not its merits, the plaintiff must allege enough facts to state a claim that is facially plausible. *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means enough facts are pled to draw reasonable inferences as to liability. *Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading need not allege "detailed factual allegations," but it must state enough facts to lift the claim above the speculative level. *Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals" of the elements, supported by conclusions, do not suffice. *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, the Court accepts all well-pled

facts as true and draws all reasonable inferences for the plaintiff. *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *accord Kloss*, 462 F. Supp. 3d at 874-75.

Substantively, the TCPA authorizes the Federal Communications Commission ("FCC") to regulate telemarking. *See* 47 U.S.C. § 227; *U.S. v. Dish Network LLC*, 75 F. Supp. 3d 916, 920 (C.D. Ill. 2014). Section 227(c)(5), which is invoked by Plaintiff, creates a private right of action to protect residential telephone subscribers' rights, providing:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> > (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
> >
> > (C) both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5).

To support a "Do-Not-Call" claim under § 227(c)(5), a plaintiff must "allege facts allowing a reasonable inference that she 'received more than one telephone call within

4

any 12-month period by or on behalf of the same entity in violation of the regulations.' " *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (quoting 47 U.S.C. § 227(c)(5)). A seller who does not initiate the calls may be vicariously liable, based on agency principles, for violations of § 227(c) committed by its agents or third parties. *Id*. at 742 (citing 2013 FCC Ruling, 28 FCC Rcd. 6582-83 ¶¶ 24-26, 28); *accord Showers v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-2864, 2024 WL 4350309, *5 (S.D. Ill. Sept. 30, 2024).

### A. The Do-Not-Call Registry Class

One regulation prescribed under § 227(c), and adopted by the FCC, is § 64.1200(c)(2) of Title 47 of the Code of Federal Regulations, which states as follows:

(c) No person or entity shall initiate any telephone solicitation to:

…

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:

(i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:

(A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;

(B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;

(C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

5

>> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

47 C.F.R. § 64.1200(c)(2); *see also* 47 U.S.C. § 227(a)(4) (stating, with three exceptions not at issue here, " 'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase…of…property, goods, or services, which is transmitted to any person"); *Dish Network LLC*, 75 F. Supp. 3d at 920 (discussing how "[t]he resulting overlapping regulations prohibit three types of telemarketing practices," including "calling a person whose telephone number is registered on the Registry").

In its Motion to Dismiss, Defendant notes Plaintiff specifically identifies 13 sets of text messages, but no telephone calls, allegedly received from Defendant. (Doc. 26, pgs. 1-2). Defendant argues those text messages do not each have a well-pleaded, nonconclusory, and nonspeculative connection to Defendant. (Doc. 26, pgs. 2-3, 12-14). Defendant notes it is only mentioned in or connected to 6 of the 13 text messages. (Doc. 26, pgs. 2, 12-14). Therefore, Defendant argues Plaintiff assumes any text message, stating the sender's name and relating to health insurance, were sent by Defendant. (Doc. 26, pgs. 2, 12-14). Further, Defendant argues a prior owner of Plaintiff's telephone number, not Plaintiff himself, registered the telephone number on the Do-Not-Call Registry, and Plaintiff did not make a Do-Not-Call request in response to any text message connected to Defendant. (Docs. 26, pgs. 2-3, 9-10, 14-15; 34, pgs. 2-4). Even if he had taken the latter action, though, Defendant states it did not recontact Plaintiff. (Doc. 26, pgs. 15-16).

In his Response, Plaintiff indicates Defendant "misstates the law" by arguing only those who personally register their telephone numbers on the Do-Not-Call Registry may invoke § 227(c)(5) of the TCPA. (Doc. 30, pg. 1). According to Plaintiff, once a telephone number is added to the Do-Not-Call Registry, the registration must be honored indefinitely, unless it is cancelled by the consumer of the telephone number. (Doc. 30, pg. 1). Therefore, in this case, regardless of who requested the addition of the telephone number to the Do-Not-Call Registry, Plaintiff argues Defendant was required to honor the registration "indefinitely" because it was never cancelled. (Doc. 30, pgs. 2-4).

Here, Plaintiff has adequately alleged he "received more than one telephone call within any 12-month period by or on behalf of" Defendant "in violation of the regulations prescribed under" § 227(c)(5). *See* 47 U.S.C. § 227(c)(5); *Toney*, 75 F. Supp. 3d at 746. While Plaintiff does not include the same level of specificity for the alleged telephone calls as he does for the text messages, the Court finds the allegations of the First Amended Class Action Complaint, when taken together and viewed in a light most favorable to Plaintiff, plausibly state a claim to relief under § 227(c)(5) and § 64.1200(c)(2). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); *Toney*, 75 F. Supp. 3d at 746; *Kloss*, 462 F. Supp. 3d at 876; *Fosnight*, 41 F.4th at 921-22. As noted above, Plaintiff alleges, "[t]hroughout 2023, [he]…received calls and text messages from…Defendant soliciting insurance quotes for somebody name Randy," despite "not know[ing] who Randy is and…t[elling] the callers and texters that he is not Randy and…ask[ing] for the calls to stop." (Doc. 25, pg. 14). Plaintiff then provides screen shots of telephone solicitations, *i.e.*, text messages, allegedly received from Defendant. (Doc. 25, pgs. 14-19, 22, 24-29). The text messages, allegedly

7

sent to Plaintiff despite Defendant's receipt and confirmation of "stop" communications, include references to "health options" or "health coverage," a healthcare "Marketplace," "private PPO plans," "bcbs" and "cigna" plans, "short-term and private" "marketplace options," "U.H.C and B.C.B.S options," and admissions that "I am with US Health Group" or "USHA." (Doc. 25, pgs. 14-19, 22, 24-29). Indeed, Defendant admits it is mentioned in or connected to at least 6 of 13 text messages. (Doc. 26, pgs. 2, 12-14).

On one occasion, in response to an inquiry from "USHA" about whether he "want[ed] medical dental vision or all three," Plaintiff responded, "No duck off." (Doc. 25, pg. 18). On two other occasions, Plaintiff responded "No" or "Stop" to inquiries about "U.H.C and B.C.B.S options" or "quotes," after which he was told "I'll remove you from my contact list" or "[y]ou have successfully been unsubscribed." (Doc. 25, pgs. 19, 28). In light of these allegations, Plaintiff has done more than enough to put Defendant on notice under Federal Rule of Civil Procedure 8(a)(2), which is all that is required at this stage.

Further, another member of this Court recently addressed the argument, asserted by Defendant in this case, that a telephone subscriber must personally register his or her telephone number on the Do-Not-Call Registry. *See Showers*, 2024 WL 4350309 at *7. It is notable at the outset, though, that Plaintiff alleges he did try "to register [his cell phone number] on the [Do-Not-Call Registry]" when he acquired his cell phone number, "but he found that the number was already registered" by its prior user. (Doc. 25, pg. 14). And, as set forth by the regulation itself, "do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

8

In any event, in *Showers*, Chief Judge Rosenstengel declined to dismiss a plaintiff's claim under § 64.1200(c) based on that argument, reasoning the defendants' out-of-circuit authority was unpersuasive since they were inserting an adverb, *i.e.*, "personally," into the regulatory text, *i.e.*, "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," that was not used by the FCC. *See Showers*, 2024 WL 4350309 at *7. Since the regulatory text requires that a telephone subscriber register his or her phone number on the Do-Not-Call Registry, Chief Judge Rosenstengel found there was no requirement that an individual "personally" register the telephone number. *Id.* (quoting *Moore v. Healthcare Sols Inc.*, No. 21-cv-4919, 2022 WL 17487823, *5 (N.D. Ill. Dec. 7, 2022)). Similar reasoning was applied by Judge Seeger in *Moore*:

> Th[e] argument [that a telephone subscriber must personally register the telephone number] rests on an unduly strict reading of the regulation. The text refers to a subscriber 'who has registered' a telephone number. [Citation]. [Defendant] reads that provision to mean a subscriber 'who has [personally] registered' a particular number. In effect, [Defendant] is attempting to inject an adverb that is nowhere to be seen.
>
> Nothing in the text ascribes any importance to the person who registered the number. The focus is on whether the number was registered, not who did the registration. The regulation protects numbers, not particular people. That's why the Registry includes numbers, not names.
>
> …
>
> The most natural reading of the regulation prohibits unwanted calls to a number. It is natural to read the statute to protect a number, not simply the person who registered the number.
>
> That reading of the regulation seems to fit with the breadth of the statutory text, too. The statute greenlights a claim by a 'person who has received more than one telephone call within any 12-month period by or on behalf of the

9

same entity in violation of the regulations prescribed under this subsection.' [Citation]. It protects a 'person' who 'received more than one telephone call.' [Citation]. It doesn't seem to matter who registered the number. Anyone on the receiving end of the call can turn the tables and file suit.

*Moore*, 2022 WL 17487823 at *5.

The Court finds this reasoning from *Showers* and *Moore* persuasive; thus, it will not dismiss Plaintiff's claim based on the fact that his telephone number was purportedly registered on the Do-Not-Call Registry by a prior telephone subscriber. *See Showers*, 2024 WL 4350309 at *7; *Moore*, 2022 WL 17487823 at *5; 47 C.F.R. § 64.1200(c)(2); *see also Abrahamian v. loanDepot.com LLC*, No. 23-cv-728, 2024 WL 1092442, *2 (D. Ariz. March 13, 2024) ("The Court finds the complete language of the implementing regulation more instructive. [Citation]. Though the regulation states that it applies to a 'residential telephone subscriber who has registered his or her number' on the DNC Registry, it goes on to require that DNC registrations 'must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.' [Citation]. The Court reads this language to mean that as phone numbers change hands, the DNC Registry may not always reflect which consumers requested to be included. Therefore, the Court finds that the language includes the term 'indefinitely' to remove the ambiguity of which numbers should be protected.").[1]

For these reasons, the Motion to Dismiss Plaintiff's First Cause of Action for the Do Not Call Registry Class is **DENIED**.

---

[1] *But see Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 WL 2713278, *2-3 (N.D. Iowa June 9, 2022).

10

### B. The Internal Do-Not-Call Registry Class

Another regulation prescribed under § 227(c), and adopted by the FCC, is § 64.1200(d), which states: "No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The minimum standards include the following:

> (1) Written policy. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel. Personnel…who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.
>
> (4) Identification of callers and telemarketers. A person or entity making…any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on

> whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and (for telemarketing calls) the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

*Id.*

Again, in the Motion to Dismiss, Defendant notes Plaintiff specifically identifies 13 sets of text messages, but no telephone calls, that were allegedly received from Defendant. (Doc. 26, pgs. 1-2). Without well-pleaded, nonconclusory, and nonspeculative allegations, however, Defendant argues Plaintiff simply requests that the Court assume it solicited the sale of health insurance with telephone calls before implementing the Do-Not-Call procedures required by law, *i.e.*, a written policy, personnel training, and the recording and honoring of requests within 30 days. (Doc. 26, pgs. 2, 10-12).

In his Response, Plaintiff argues he repeatedly requested that the agents stop contacting him on behalf of Defendant. (Doc. 30, pg. 5). At this stage in the proceedings, Plaintiff argues the allegation that Defendant did not honor his opt-out requests is sufficient for the Court to infer that Defendant did not adequately maintain the policies and procedures required by the TCPA. (Doc. 30, pgs. 5-6). Plaintiff suggests this is true

even if Defendant outsourced the responsibility for solicitations to its agents or a third parties. (Doc. 30, pg. 6). Plaintiff emphasizes, in this case, he made six separate "stop" requests to agents acting on behalf of Defendant. (Doc. 30, pg. 6). Nevertheless, Plaintiff alleges he continued to receive text messages from Defendant's agents. (Doc. 30, pg. 6).

Here, again, Plaintiff has adequately alleged he "received more than one telephone call within any 12-month period by or on behalf of" Defendant "in violation of the regulations prescribed under" § 227(c)(5). *See* 47 U.S.C. § 227(c)(5); *Toney*, 75 F. Supp. 3d at 746. By extension, although the Court has already recognized Plaintiff did not include the same level of specificity for the alleged telephone calls as he did for the alleged text messages, the Court finds the allegations of the First Amended Class Action Complaint, on the whole and viewed in Plaintiff's favor, plausibly state a claim to relief under § 227(c)(5) and § 64.1200(d). *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d); *Toney*, 75 F. Supp. 3d at 746; *Kloss*, 462 F. Supp. 3d at 876; *Fosnight*, 41 F.4th at 921-22. More specifically, Plaintiff has alleged that Defendant, by virtue of its telephone calls and text messages, must have failed to institute the minimum standards for the "procedures for maintaining a list of persons who request not to receive such calls" under § 64.1200(d). *See* 47 C.F.R. § 64.1200(d). The repeated nature of the telephone calls and texts messages, as alleged by Plaintiff and despite the "stop" communications, render the claim facially plausible and provide notice under Rule 8(a)(2). *See Kloss*, 462 F. Supp. 3d at 876; *Fosnight*, 41 F.4th at 921-22; *see also Moore v. Pro Custom Solar LLC*, No. 21-cv-4395, 2022 WL 1092186, *5 (N.D. Ill. April 12, 2022) (denying motion to dismiss § 64.1200(d) claim where, *inter alia*, the plaintiff continued to receive calls from the defendant after asking to be placed on its

internal do-not-call list and receiving written notice that the request was granted, as to suggest the defendant's staff was not trained in implementing its do-not-call policy).

For these reasons, the Motion to Dismiss Plaintiff's Second Cause of Action for the Internal Do Not Call Registry Class is **DENIED**.

### III. CONCLUSION

For the reasons stated above, the Motion to Dismiss is **DENIED**. The stay of discovery is **LIFTED**. The Final Pretrial Conference and Jury Trial are **RESET** for November 5, 2026, at 10:00 a.m., and November 16, 2026, at 9:00 a.m., respectively. Within 21 days, the parties are **DIRECTED** to meet, confer, and report on a proposed scheduling and discovery order, which shall be submitted to DWDpd@ilsd.uscourts.gov for the Court's review. The parties are also **DIRECTED** to use the correct form for the proposed scheduling and discovery order. (Doc. 14-1).

**SO ORDERED.**

Dated: November 25, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge